CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant, v CITY OF NEW ROCHELLE, Respondent, and CITY OF WHITE PLAINS et al., Intervenors-Respondents.

Second Department, September 12, 1988

## APPEARANCES OF COUNSEL

*Joy Tannian, Richard W. Babinecz* and *John D. McMahon* for appellant.

*McGovern, Connelly & Davidson (Frank H. Connelly, Jr.,* and *Margaret M. Fitzpatrick* of counsel), for respondent.

*Cerrato Sweeney Cohn Stahl & Vaccaro (Julius W. Cohn* and *Wayne H. Spector* of counsel), for The Plumbing and Mechanical Contractors Association of Westchester and Putnam Counties, Inc., intervenor-respondent.

*Donald F. Menagh, P. C. (David M. Stolow* and *John A. Vasile* of counsel), for Utility Workers Union of America, Local Union No. 1-2, AFL-CIO, *amicus curiae.*

*Robert A. Simpson (Kathryn C. Brown* of counsel), for Public Service Commission, *amicus curiae.*

### OPINION OF THE COURT

Per Curiam.

The question on this appeal is whether the Plumbing and Drainage Code of the defendant City of New Rochelle, in particular sections 17.3.1 and 17.4.1, included in Ordinance 197 which amended the Plumbing and Drainage Code, and, by implication, similar local laws of the intervenors Town of Greenburgh, and the City of White Plains, are invalid, either because the State Legislature, by enactment of Public Service Law § 31 (4), has preempted the field of regulation concerning the new installation of service lines to applicants seeking the provision of gas service to residential buildings on private property, or because the local laws are inconsistent with the State statute.

### I

In 1981, the Legislature passed the Home Energy Fair Practices Act (hereinafter HEFPA) pursuant to which Public Service Law §§ 30 through 50 were enacted (L 1981, ch 713). Public Service Law § 31 (4) provides: "the case of any application for service to a building, which is not supplied with * * * gas, a utility corporation or municipality shall be obligated to provide service to such a building, provided however, that the commission may require applicants for service to buildings located in excess of one hundred feet from gas * * * lines to pay or agree in writing to pay material and installation costs relating to the applicant's proportion of the pipe * * * or other facilities to be installed".

After a hearing held on May 28, 1986, the Public Service Commission (hereinafter PSC) filed new regulations on June

10, 1986, effective July 1, 1986, amending 16 NYCRR part 230, pursuant to its jurisdiction and the authority conferred by Public Service Law § 31 (4). The PSC amended the definition of a "service line" to provide that it extend to the first accessible fitting inside the wall of a customer's building when a meter is located within the building, and if the meter is located outside the building, the service line is deemed to terminate at the outside of the building foundation wall (16 NYCRR 230.1 [b]). The utility's obligations with respect to applications for new installations for residential service resulted in the promulgation of 16 NYCRR 230.2 and 230.3, and the obligations with respect to the maintenance and replacement of facilities are set forth in 16 NYCRR 230.6.

As a result of the amendment of 16 NYCRR part 230, the plaintiff issued a new tariff which mirrored the regulations and which provided that it would "furnish, place and construct" all new service lines extending to the customer's building. When it notified architects, engineers, and plumbing and heating contractors that it would perform the new service installations on private property, the defendant City of New Rochelle's plumbing inspector notified the plaintiff that pursuant to the Plumbing and Drainage Code of the City of New Rochelle §§ 17.3.1 and 17.4.1, service pipe must be installed on private property by a licensed plumber holding a plumbing permit. The plaintiff's employees who install gas services in the Westchester division are not licensed plumbers. Therefore, the plaintiff commenced the instant action for declaratory relief. The defendants Town of Greenburgh and City of White Plains thereafter were granted leave to intervene based on the fact that they had similar ordinances. It appears that some of these parties refused to issue permits to the plaintiff for the installation of service pipes to customers' buildings.

The Supreme Court, Westchester County, in denying the plaintiff's motion for summary judgment, found that the plaintiff did not have the "sole responsibility" for new applications for residential service line installations, based on the fact that neither the Public Service Law or the regulations promulgated pursuant thereto specifically mentioned the word "install" (136 Misc 2d 505). The court ruled that the general law and the regulations did not preempt the local code requirements that licensed plumbers install service piping on private property, and also found that the local codes were consistent with State law. Finally, the court ruled that when the plaintiff

submitted its tariff, it took upon itself the power to install new service lines beyond the intent and authorization of the PSC.

■ We disagree with these findings.

## II

The constitutional home rule provision confers broad police powers upon local governments relating to the welfare of their citizens but local governments may not exercise their police power by adopting a law inconsistent with the Constitution or any general law of the State *(see,* NY Const, art IX, § 2 [c]; *Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 96; *Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 105). Where it is determined that the State has preempted an entire field, a local law regulating the same subject matter is deemed inconsistent with the State's overriding interests because it either (1) prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable, or at least does not proscribe, or (2) imposes additional restrictions on rights granted by State law *(Jancyn Mfg. Corp. v County of Suffolk, supra,* at 97).

The plaintiff does not argue that the ordinances are expressly in conflict with the provisions of Public Service Law § 31 (4). No express right is given by State law to utilities to install service line on private property with its own employees who are not licensed plumbers. The State law only expressly imposes an obligation on utilities to provide service line extensions to a customer's building on private property *(see,* Public Service Law § 31 [4]), and the fact that both the State and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict *(see, Jancyn Mfg. Corp. v County of Suffolk, supra,* at 97). Therefore, in the absence of an express conflict, whether a local law is invalid as inconsistent with the State's overriding interest turns on whether the State has preempted the entire field of service line installations and thus precluded any further local regulation *(see, Jancyn Mfg. Corp. v County of Suffolk, supra,* at 98). The intent to preempt may be evinced in the Legislature's declaration of State policy, or in enactment of a broad or detailed statutory or regulatory scheme seeking across-the-board uniformity and compliance with the general law, or where a regulatory body has been vested expressly or implicitly with exclusive jurisdiction over the matter, or where there is an express superseder clause *(see, Jancyn Mfg. Corp. v*

*County of Suffolk, supra,* at 98-100; *Consolidated Edison Co. v Town of Red Hook, supra,* at 105).

### III

In reviewing Public Service Law §§ 30 through 50 enacted by the Legislature as part of HEFPA and within which Public Service Law § 31 (4) is contained, the declared policy of the State is: "the continued provision of gas * * * service to residential customers without unreasonable qualifications or lengthy delays is necessary for the preservation of the health and general welfare and is in the public interest" (Public Service Law § 30). HEFPA generally provided detailed safeguards to protect persons from being deprived of utility service, and sections of the Public Service Law enacted as part of HEFPA are deemed to establish controlling across-the-board uniform procedures *(see, Matter of Public Serv. Commn. v Village of Freeport,* 110 AD2d 704; *Montalvo v Consolidated Edison Co.,* 92 AD2d 389, 398, *affd* 61 NY2d 810).

Transportation Corporations Law § 12, enacted prior to Public Service Law § 31 (4), requires that upon written application of the owner or occupant of any building within 100 feet of a gas corporation main, the gas corporation "shall supply gas * * * *as may be required".* (Emphasis supplied.) By contrast, Public Service Law § 31 (4) requires that in the case of any application for service to a building not supplied by gas, "a utility corporation * * * shall be obligated to *provide service to such a building".* (Emphasis supplied.) The Legislature was certainly aware when it enacted Public Service Law § 31 (4), that in 1944, the PSC interpreted Transportation Corporations Law § 12 as only requiring new service line installations to extend to the property line, but permitted gas corporations, if they so chose, to extend their service line installations to the customers' private property *(see, Re Rules & Regulations Regarding Installation of Mains & Facilities by Gas Corps.,* 54 PUR [NS] 264, 271-272). As a result, varying practices arose among the utilities in the State in providing services to either the customer's property line or beyond *(see, e.g., Jaffe Plumbing & Heating Co. v Brooklyn Union Gas Co.,* 51 Misc 2d 1083, 1086, *affd* 29 AD2d 1051, *affd* 26 NY2d 851). Some utilities required the customer to hire someone, usually a licensed plumber, to install service lines from the property line to the building, while other utilities installed this service line without cost. The enactment of Public Service Law § 31

(4) evinces a legislative intent to end such varying practices, establish uniformity, and ensure that qualified customers receive extensions of service line from the main to their buildings without cost.

In its rule-making capacity, the PSC is a delegate and alter ego of the Legislature, acting pursuant to the police power (see, *Montalvo v Consolidated Edison Co., supra,* at 398). Its jurisdiction extends to the "distribution of gas" and to "gas plants", which definition includes all personal property and facilities owned or used in connection with the distribution of gas (see, Public Service Law § 2 [10]; § 5 [1] [b]; § 66 [1]). The PSC is also empowered to investigate methods employed in distribution, order reasonable improvements that will best promote the public interest, and order reasonable improvements and extensions of the works, lines, and property of gas corporations (see, Public Service Law § 5 [2]; § 65 [1]; § 66 [1]). This jurisdiction over distribution and improvements extends to service line installations on private property to the customer's building (see, Public Service Law § 31 [4]; *Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.,* 67 AD2d 802; *Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 66 AD2d 509, 512, *affd* 49 NY2d 930; *Dennis v Long Is. Light. Co.,* 78 Misc 2d 400, 402).

Although neither the Public Service Law nor the PSC regulations use the word "install", or expressly make the plaintiff solely responsible to perform new service line installations, at the hearings held on the subject, the PSC clearly and repeatedly expressed its intention that the utilities were to install and extend new service lines to buildings on private property. The terms "furnish, place and construct" which are used in 16 NYCRR 230.2, were carried over from the PSC's prior rules interpreting obligations under Transportation Corporations Law § 12, pursuant to which there was no question that gas corporations themselves were required to "install" up to the property line and permitted to install beyond that line where applicable (see, *Re Rules & Regulations Regarding Installation of Mains & Facilities by Gas Corps.,* 54 PUR [NS], at 279, 280, *supra; Jaffe Plumbing & Heating Co. v Brooklyn Union Gas Co., supra,* at 1084-1086). Thus, by use of these same words in implementing the legislative directive that service lines be extended to buildings, the PSC carried over language under which a well-understood practice of installation by utility personnel previously existed, and the only new feature was that the practice now extended to buildings on ·

private property. The inclusion of the words "solely responsible" within the maintenance and replacement section (16 NYCRR 230.6), without such a reference in 16 NYCRR 230.2, does not undermine the notion that gas corporations were to perform the installations. The use of such words was intended to make it clear that even if service lines were previously installed by licensed plumbers hired by customers, the gas corporations were now wholly responsible for their maintenance and replacement. The gas corporations would of course, be solely responsible for their own new installations, and the PSC clearly found it unnecessary to further elucidate the obvious. Nor does the reference within 16 NYCRR 230.2 (a) to "any public right-of-way in which the governmental authority having jurisdiction will permit the corporation to install and maintain the facilities" evince a legislative intent to defer to local regulations covering the installation of new service lines to buildings. The reference to the permission of a governmental authority modifies "public right-of-way", and refers to the franchises granted by municipalities to gas corporations *(see,* Public Service Law § 2 [16]; Transportation Corporations Law § 11).

The plaintiff did not exceed its authority or jurisdiction in providing in its tariff that it would perform such installations. The gas corporations are permitted in their tariffs to extend their obligation to the extent the provision of additional facilities without charge is cost-justified, and can provide for material and installation costs where the service line is in excess of the minimum requirements *(see,* 16 NYCRR 230.2 [f]; 230.3 [b]). The PSC and gas corporations are empowered to protect the public interest by minimizing costs associated with the installation of utility facilities *(see,* Public Service Law § 65 [1], [2], [6]; § 66 [5], [12]; *Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.,* 67 AD2d 802), and if the plaintiff determines that use of licensed plumbers is not cost-justified, it is permitted to decline to enter subcontracting arrangements for such services. As a result, the plaintiff's decision to install service lines, and the inclusion of such a provision in its tariff were based upon a "cost-benefit" model pursuant to legislative policy, PSC jurisdiction, and the regulations, rather than any abuse of authority or improper delegation *(cf., Boreali v Axelrod,* 71 NY2d 1, 9-12). The overall scheme reflects a desire to extend the distribution system as the Legislature directed, and to keep the system under PSC jurisdiction. Since the obligation of gas corporations is to

extend the gas distribution system to residential buildings, the Legislature, the PSC, and the plaintiff determined that it was unwise to have gas facilities installed or maintained by private individuals, and that such a mixture of obligations was not in the public interest *(cf., Re Rules & Regulations Regarding Installation of Mains & Facilities by Gas Corps.,* 54 PUR [NS] 264, 272, *supra; see also, Matter of Polsky v Walsh,* 220 App Div 559, 566).

That the Legislature did not intend to subject the plaintiff to local ordinances requiring licensed plumbers to install service lines is further supported by the extensive welder qualification provisions and specific regulations for the installation of gas service lines into or under buildings, which provisions predate the enactment of Public Service Law § 31 (4) *(see,* 16 NYCRR 255.33, 255.59). No party has disputed the abilities of the plaintiff's qualified employees to perform such work.

■ Thus, the history and scope of Public Service Law § 31 (4), as well as its comprehensive regulatory scheme, evince the Legislature's desire to preempt further regulation in the area of service line installations, a desire that would be frustrated by laws such as the defendant's licensing requirements *(see, Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 98-100, *supra; Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 106-107, *supra).*

## IV

■ Even if the Legislature had not preempted the field of regulation, the City of New Rochelle's authority to enact local laws under the Constitution or the Municipal Home Rule Law is conditioned on the exercise of such authority not inconsistent with any State enactment *(see, Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 107, *supra).* The definitions of "gas piping", "house gas piping" and "service piping" contained in the Plumbing and Drainage Code of the City of New Rochelle § 17.2.1, include piping "on any premises" or "in any building" and clearly conflict with Public Service Law § 31 (4) and the regulations which require extension of service line to the first fitting within the building wall where applicable, and in any event, require extensions onto private property *(see,* 16 NYCRR 230.1 [b]). The requirement that such installations be performed only by licensed plumbers imposes an additional layer of regulation in an area where the Legislature has

evinced its intent to preempt the field of regulation, adds further restrictions to the plaintiff's duty and ability to install service lines, and most significantly, prohibits such service installations by utility workers altogether. As such, the requirement is inconsistent with State law *(see, Consolidated Edison Co. v Town of Red Hook*, 60 NY2d 99, 104-105, 107-108, *supra)*. The defendant and intervenor cities and town have arrogated to themselves the power to determine solely on the basis of local concerns, whether the installations within Public Service Law § 31 (4) can be conducted by utility workers, and the licensing provisions would, and have, enabled local communities to prevent the installation of service lines on private property from ever being made by the qualified employees of the plaintiff, requirements not imposed by the Public Service Commission. However, to the extent the local ordinances in question require licensed plumbers to perform work *beyond* the areas specified in 16 NYCRR 230.1 (b), as is appropriate under the circumstances, the ordinances are not inconsistent or preempted by State law. Finally, the local ordinances may require that permits be obtained by the plaintiff to perform installation work, provided such permits are not conditioned upon the performance of the work by licensed plumbers *(see,* 16 NYCRR 230.2). However, the judgment should be modified to declare invalid and enjoin the enforcement of the challenged provisions of the City of New Rochelle's ordinance to the extent that those provisions conflict with Public Service Law § 31 (4), and 13 NYCRR part 230.

KOOPER, J. P., SULLIVAN, HARWOOD and BALLETTA, JJ., concur.

Ordered that the order and judgment is modified, on the law, by deleting the provision thereof denying the plaintiff's motion and dismissing the complaint in its entirety, and substituting therefor a provision (1) granting the plaintiff's motion to the extent that Ordinance 197 of the City of New Rochelle, to the extent that it conflicts with Public Service Law § 31 (4) and 16 NYCRR part 230, is declared invalid, Plumbing and Drainage Code of the City of New Rochelle §§ 17.3.1 and 17.4.1 of said ordinance are declared invalid as applied to the plaintiff's performance of service line installations pursuant to that statute and those regulations, and the defendant City of New Rochelle is enjoined from enforcing the invalid provisions of Ordinance 197 with respect to such

service installations by the plaintiff, and (2) otherwise denying the motion and dismissing the complaint; as so modified, the order and judgment is affirmed, with costs to the plaintiff payable by the City of New Rochelle, the Town of Greenburgh, and the Plumbing and Mechanical Contractors Association of Westchester and Putnam Counties, Inc.