Charles S. Turner, Esq. Informal Opinion County Attorney No. 96-41 Monroe County Office of the Attorney General County Office Building 39 West Main Street, Room 307 Rochester, N Y 14614
Dear Mr. Turner:
Your deputy has asked whether Monroe County is authorized to enact a local law establishing a Food Service Employee Certification Program (the "Program") for certain employees of establishments where food is handled, such as restaurants, convenience stores and grocery stores. Assuming the county is authorized to establish the Program, you inquire whether it would be preempted by State law.
As described in your letter,[1] the proposed local law would require all "Food Service Establishments" operating within the county to employ at least one "Responsible On Site Person" in possession of a valid "Food Service Employee Certificate" (the "Certificate"). Included within the term "Food Service Establishments" is any place where food is prepared and intended for individual portion service to the public (whether consumption occurs on or off the premises and regardless of whether there is any charge for the food), any facility under permit as required by Part 14 of the New York State Sanitary Code and those retail food operations under the jurisdiction of the New York State Department of Agriculture and Markets. Included are restaurants, convenience stores and supermarkets. The "Responsible On-Site Person" may be an operator or employee of the Food Service Establishment who has direct responsibility and is regularly involved in the preparation of food or the supervision of those who prepare food in the establishment.
The Certificate would be obtained by the operator or employee by attending a Monroe County Food Service Employee Certification Program and earning an acceptable score on an examination on proper food handling practice.[2] Notwithstanding any provision of the proposed law or of Part 14 of the New York State Sanitary Code, no permit would be issued to a food service establishment until it has employed a Responsible On-Site Person in possession of a valid Certificate. The proposed law states that nothing therein shall be construed to limit the application of all other provisions of the Monroe County Sanitary Code or the New York State Sanitary Code pertaining to the issuance of permits to food service establishments.
The home rule provisions of the State Constitution and the Municipal Home Rule Law grant broad authority to local governments, including counties, to enact local laws relating to the government, protection, order, conduct, safety, health and well-being of persons or property therein, provided that those enactments are not inconsistent with any general law. N Y Const, Art IX, § 2(c)(10); Municipal Home Rule Law §10(1)(ii)(a)(12); see, New York State Club Assn., Inc. v. City of NewYork, 69 N.Y.2d 211 (1987). The proposed Program clearly relates to these purposes and is thus within the county's police power, provided that the law is not inconsistent with the Constitution or State law.
A local law will be ruled invalid as inconsistent with State law not only where an express conflict exists between it and State law, but also where the State has clearly evinced an intent to preempt an entire field, thereby precluding local regulation of the subject matter. Jancyn Mfg.Corp. v. Suffolk County, 71 N.Y.2d 91, 96-97 (1987); Hertz Corp. v. Cityof New York, 80 N.Y.2d 565, 569 (1992). The intent to preempt may be express or implied. Thus it may be evidenced by an express statement in the statute, or by the enactment of a statutory scheme so detailed and broad in scope so as to require a determination that the Legislature impliedly intended to supersede all existing and future regulation of the subject matter. Jancyn Mfg. Corp. v. Suffolk County, supra,71 N.Y.2d at 99.
The Program proposes to require certification of employees at food establishments regulated by the Department of Health as well as the Department of Agriculture and Markets. Thus, we have examined the pertinent provisions of the Public Health Law, the Agriculture and Markets Law and the regulations promulgated thereunder to assess whether the State has intended to foreclose any such local regulation, or whether the Program is otherwise inconsistent with existing State statute or regulation.
The Public Health Law grants authority to the Public Health Council to enact sanitary regulations, known as the State Sanitary Code. Public Health Law § 225(4). The Public Health Law contains no express preemption provision. On the contrary, while it states that the provisions of the Sanitary Code shall supersede all local ordinances inconsistent therewith (Public Health Law § 228[1]), it provides that "[e]ach county . . . may enact sanitary regulations not inconsistent with the sanitary code established by the public health council". Public Health Law § 228(2). Local laws, ordinances and regulations that comply with at least the minimum standards prescribed by the Sanitary Code are deemed not inconsistent with the Sanitary Code. Public Health Law § 228(3); see,Matter of Bri-Mar Corp. v. Town Board of the Town of Knox, 74 N.Y.2d 826
(1989). Further, Public Health Law § 347, addressing more specifically the powers of county boards of health, similarly authorizes those entities to adopt regulations not inconsistent with the statute or the Sanitary Code. See, 1980 Op Atty Gen (Inf) 198. These provisions specifically open the subjects within the State Sanitary Code to local regulation, authorizing localities to supplement the State regulations, provided that such local enactments are not inconsistent with, and meet the minimum standards of, the Sanitary Code.
We have not discerned any inconsistency between the proposed Program, as described in your letter, and any existing provision of the Public Health Law or the Sanitary Code. Title VIII of the Public Health Law addresses food handling, setting forth certain sanitary requirements and the authority of the Commissioner to conduct inspections. Public Health Law §§ 1350, et seq. Part 14 of the Sanitary Code, pertaining to food service establishments, contains additional detailed regulations regarding food handling practices. Neither the statute nor the Sanitary Code requires a training and certification program on food handling practices. Significantly, however, the Sanitary Code provides that "[t]he permit-issuing official may establish and conduct or designate training programs and require that owners and/or operators of food service establishments attend them". 10 NYCRR § 14-1.73. As regards a county, the "permit-issuing official" is defined as the county health commissioner. 10 NYCRR § 14-1.190. Thus, the proposed Program would not be inconsistent with the Public Health Law or the Sanitary Code, but is in fact authorized and encouraged by the foregoing regulation. The Program would, of course, have to train and certify food handlers in accordance with at least the minimum applicable standards for food handling set forth in the State statutes and regulations.
Similarly, the Agriculture and Markets Law contains no express preemption provision. Unlike the Public Health Law, it does not explicitly authorize local sanitary regulation. However, the statute endorses "local initiative and government" and "home-rule measures" in its "Declaration of policy and purposes" (Agriculture and Markets Law § 3), negating any legislative intent to fully preempt local legislation regarding its subject matter. Notably, Agriculture and Markets Law
§ 16(24) directs the Department of Agriculture and Markets to "[c]o-operate with local health departments . . . in preventing the production, manufacture, sale or offering for sale of fraudulent, deleterious or unwholesome food". Also, the Department has power to require each applicant for a license, permit or registration issued under the provisions of the Agriculture and Markets Law to satisfy the Commissioner that the applicant is or will be in compliance with all ordinances or local laws of the county, city, town and village in which the business or occupation will be conducted and which have a bearing on the applications. Id., § 16(33).
Further, there is no evident inconsistency between the proposed Program and any existing Agriculture and Markets statute or regulation. Article 20-C of the Agriculture and Markets Law governs food service establishments, providing for licensing and inspection of such establishments for compliance with sanitary practices. Agriculture and Markets Law §§ 251-z-1, et seq. The Agriculture and Markets regulations for retail food stores and other food establishments under the jurisdiction of the Department set forth food handling and sanitary requirements for such facilities. 1 NYCRR Part 271. No provision of the Agriculture and Markets Law or regulations thereunder requires a training and certification program on food handling practices. However, the regulations do address the education and training of personnel responsible for identifying sanitation failure and food contamination and of food handlers and supervisors in providing that "plant management shall take all reasonable measures and precautions to assure the following":
 (c) Education and Training. Personnel responsible for identifying sanitation failure or food contamination should have a background of education or experience or a combination thereof, to provide a level of competency necessary for production of clean and safe food. Food handlers and supervisors should receive appropriate training in proper food-handling techniques and food-protection principles and should be cognizant of the danger of poor personal hygiene and unsanitary practices. 1 NYCRR § 261.8(c).
This regulation encourages training of food handlers and supervisors in appropriate food handling practices. The fact that the proposed Program would mandate what this regulation only
encourages does not render the Program inconsistent therewith.
 As long as a local law neither prohibits what would be permissible under State law nor imposes prerequisites or additional restrictions on rights granted under State law so as to inhibit the operation of the State's general laws, it cannot be said to be inconsistent with the State law. Bracker v. Cohen, 204 A.D.2d 115, 116 (1st Dept 1994); see, New York State Club Assn. v. City of New York, 69 N Y 2d 211, 217 (1987).
The Program would prohibit nothing that is expressly permissible under State law. To the extent that the Program would impose mandatory certification as an additional prerequisite for an establishment's operation, it cannot be said to inhibit the operation of the State's general law. To the contrary, the Program would make mandatory what is strongly encouraged by the foregoing regulation, promoting rather than inhibiting the State's goal of assuring proper food handling and sanitation practices.
In Jancyn Mfg. Corp. v. Suffolk County, 71 N.Y.2d 91, supra, State law prohibited the sale and use of certain sewage system cleaning additives in Suffolk and Nassau Counties and empowered the Commissioner of the Department of Environmental Conservation to promulgate regulations requiring that manufacturers of other cleaning additives submit information regarding their chemical components and the nature and extent of research concerning their effects, if any, on ground water. The Commissioner was empowered to prohibit or restrict the sale and use of a product found likely to endanger the environment.
In issue was the validity of a Suffolk County local law prohibiting the sale of sewage cleaning additives without prior approval by the Suffolk County Commissioner of the Department of Health Services. Under the local law, a person could obtain approval by submitting scientific data demonstrating to the Commissioner's satisfaction that the product would not adversely affect ground waters.
The plaintiff submitted information regarding its product to the Department of Environmental Conservation and received approval under State law to sell the product. However, under the provisions of the Suffolk County local law, the county prohibited the sale of plaintiff's product. The Court of Appeals found no express conflict between the local and State regulations, reasoning that no right or benefit was expressly given to a manufacturer under State law which was curtailed or taken away by local law.
 Rather, the State law expressly imposes an obligation on manufacturers of cesspool additives to provide information relating to the environmental impact of their products. The fact that both the State and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict. Jancyn Mfg. Corp. v. Suffolk County, supra, 71 N.Y.2d at 97.
Like the local law in Jancyn, Monroe County's proposed local law is consistent with the policy established by State law to have properly trained food handlers and supervisors in food service establishments. The fact that the local law would establish stricter requirements than State law to accomplish this policy does not lead to a conclusion that the local law is inconsistent with State law. Jancyn Mfg. Corp. v. SuffolkCounty, 71 N.Y.2d 91, supra. Any argument that the proposed local law, in requiring certification, "prohibits what State law would allow" (State law encourages but does not require training) and is, therefore, invalid, is without merit. Jancyn Mfg. Corp. v. Suffolk County, supra,71 N.Y.2d at 100. In the absence of preemption
 "This statement of the law is much too broad. If this were the rule, the power of local governments to regulate would be illusory." Jancyn Mfg. Corp. v Suffolk County, supra, 71 N.Y.2d at 100.
As Chief Judge Cardozo said in an often-cited concurring opinion in a seminal decision affecting home rule powers:
 The concern of the State to protect the health and welfare of its inhabitants may not stand in the way of action by the city consistent with the ends envisaged by the State, but adding greater safeguards with reference to related ends that are municipal or urban. So the statute says. So, it may be argued, the law would say anyhow, if the statute had been silent. Adler v. Deegan, 251 N.Y. 467, 486
(1929).
Accordingly, the proposed Program would not be inconsistent with the Agriculture and Markets Law and the regulations thereunder. Again, it is essential that the Program train in accordance with at least the minimum sanitary standards set forth in the State statutes and regulations.
We conclude that a county possesses home rule authority to establish a Food Service Employee Certification Program for employees of establishments where food is handled, such as restaurants, convenience stores and grocery stores. The State Legislature has not evinced an intent to preempt wholly the field of food handler regulation, nor is the proposed Program inconsistent with any existing State statute or regulation. Accordingly, the Program would not be preempted by State law.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
ROBERT GOLDFARB, Assistant Attorney General
[1] Opinions of the Attorney General do not review local enactments. These are matters appropriately left with local officials familiar with local conditions and local legislative intent. This opinion is limited to the specific questions raised and the Program as described in your letter.
[2] In your July 31, 1996 letter, you state that the Director of the Monroe County Health Department would define course requirements and issue the certificate.